BEFORE THE THIRD DIVISION, APRIL 16, 1942

**No. 47096.**—Protest 978865–G of T. M. Duche & Sons, Inc. (New York).

KEEFE, Judge: This action involves certain merchandise invoiced as "Blandola, a vegetable gelatone or gum," upon which duty was assessed at 20 per centum ad valorem under paragraph 1558 of the act of 1930 as a nonenumerated manufactured article.   The plaintiff claims that the merchandise is dutiable at 10 percent ad valorem under paragraph 1558 as raw or unmanufactured, or free of duty under paragraph 1722 as seaweed, crude or unmanufactured, or, if dutiable, it is dutiable at 10 percent ad valorem under paragraph 1540 as seaweeds, manufactured.

At the trial of this case certain reports of the Government chemist were offered and admitted in evidence without objection and the case was submitted upon the papers in the case.

The reports in evidence contain the following statements:

The sample is an extract of seaweed covered by T. D. 43065.

The sample is not sodium alginate but an extract of seaweed covered by T. D. 43065.

The decision referred to in the chemist's reports, *Stone & Downer Co. v. United States*, T. D. 43065, involved merchandise described as "Norgin extra seaweed

product" and was reported by the appraiser as consisting of a preparation made by dissolving seaweed in an alkaline solution and evaporating the same. It was there claimed that the merchandise was free of duty as seaweed, crude or unmanufactured. The case there was submitted on the record including the sample, without the introduction of any evidence. Upon examination of the sample, the court found it to be in the form of small uneven flakes, hard and brittle, having much the same appearance as broken cinnamon, and that when placed in water it dissolved into a sticky, shapeless mass, giving the water the appearance and consistency of mucilage. The court was of the opinion that if unmanufactured and nothing more than seaweed the merchandise would have unfolded into the shape of the plant when in its natural state, and therefore found that it was advanced in condition beyond its crude state and not in an unmanufactured condition and held it properly dutiable as assessed by the collector.

The plaintiff here claims that the merchandise in question is more than crude or unmanufactured seaweed and has undergone manufacturing processes from which it has emerged as a totally different article from seaweed in its natural state, having attained the class of products *eo nomine* provided for as seaweeds, manufactured.

The Government contends that the merchandise in question has undergone a manufacturing process which gives it a name, character, and use different from seaweed, either crude or manufactured, thereby precluding its classification in either of the provisions for seaweed in its respective forms; and that the classification of the collector brings the merchandise within the class of a manufactured article which is not otherwise provided for than in the nonenumerated manufactured article paragraph and that the evidence presented by the plaintiff fails to overcome the presumption of correctness of the collector's finding.

The question before us is whether or not certain merchandise established to be an extract of seaweed is classifiable under the *eo nomine* provision as "seaweeds, if manufactured or dyed," rather than a manufacture of seaweed not more specifically provided for than under the catch-all provision for nonenumerated manufactured articles.

Although the decisions of the courts are not uniform in respect to the issue now before us, there appears a general principle evolved therefrom establishing that before an article may be regarded as the manufacture of a material it must have been so far processed from its original condition as to have acquired new characteristics and become a new article with a new name and new use.

In the case of *Barham* v. *United States*, 11 Ct. Cust. Appls. 536, T. D. 39679, certain cords and braids made of the split stems of the three-cornered rush or sedge were imported to be used in the manufacture of so-called sea-grass furniture. The merchandise was classified as a manufacture of vegetable fiber. The importers claimed it properly classifiable as a sea grass manufactured, or as a manufacture of grass, or as an unenumerated manufactured article. The court found that the merchandise was not composed of fiber, and in respect to its proper classification stated as follows:

We do not think the merchandise is classifiable under paragraph 372 [Act of 1913] as sea grass manufactured, and are of opinion that it finds proper classification under paragraph 368 as a manufacture of grass. * * *

The question of whether or not an article is manufactured of a given material or whether it is a manufacture of the same material is one that has given the courts much trouble, and it is unnecessary to enter into any exhaustive discussion of the authorities.

  *   *   *   *   *   *   *

* * * while the sea grass in this case has been manufactured, the manufacturing processes applied thereto have elevated it to the condition of a manufacture of sea grass or grass. *Nothing more remains to be done, as far as the record shows,*

*to these cords and braids to constitute them a finished material ready for the manufacture of furniture.* [Italics not quoted.]

In the case of *Betz* v. *United States*, 26 C. C. P. A. 399, C. A. D. 46, the merchandise, certain "Norgine F," was classified as a chemical compound. The importer claimed it to be seaweed, crude or unmanufactured, and free of duty, or, if dutiable, it was dutiable as seaweed, manufactured, or as a nonenumerated unmanufactured or manufactured article. The court found from the evidence that "Norgine F" was derived from a natural seaweed, which after drying and cleaning was washed in water to which 2 percent of sulphuric acid and 2 percent of muriatic acid were added, the acid thereafter being neutralized with sodium carbonate, and the material then dried and cut into small pieces; and that during such process the physical and chemical identity of the seaweed was lost and the resulting product was an impure sodium alginate, a chemical compound, which was not shown to exist in the original seaweed. The court holding that the product was a chemical compound, stated:

the imported "Norgine F" is neither seaweed in a crude state nor should it be regarded as "seaweeds * * * manufactured," for tariff purposes. *To be either it is essential that it still be seaweed.* * * * We think if the material at bar was not enumerated in the tariff act, it would properly fall within the nonenumerated manufactured provision of paragraph 1558 not as a manufactured seaweed, although it has been maufactured from seaweed, but as a manufactured article regardless of from what it was manufactured. * * * While the term "seaweeds * * * manufactured" was not the exact term there under consideration by the Supreme Court, the reasoning of that case [*Meyer et al.* v. *Arthur*, 91 U. S. 570], we think is apt in deciding the issue at bar. The court said:

"When the act speaks of 'manufactures of metals,' it obviously refers to manufactured articles in which metals form a component part. When we speak of manufactures of wood, of leather, or of iron, we refer to articles that have those substances respectively for their component parts, and not to articles in which they have lost their form entirely, and have become the chemical ingredients of new forms."

In the case of *United States* v. *General Dyestuff Corp.*, 29 C. C. P. A. 53, C. A. D. 170, it was claimed that certain merchandise classified as a manufacture of wax was free as animal, vegetable or mineral wax, or as a nonenumerated manufactured or unmanufactured article. The merchandise was produced from Montan wax, which is obtained from lignite or brown coal. The montan wax is bleached and then reduced with iron powder and hydrogenated with a nickel catalyst, resulting in the imported merchandise known as "I. G. Wax Z." The court was of the opinion that merely adding a trade prefix to the word "wax" could hardly be said to be changing the name of the commodity from "wax" to some other name in a tariff sense. However, the court held that the merchandise was not classifiable as a manufacture of wax, nor as paraffin, but was a nonenumerated manufactured article. In reaching such decision, the court stated:

In our judgment, however, the instant material is still a material which may be used for making manufactures of wax responding to the language of the dutiable provision, paragraph 1536. It is rarely difficult to determine when a thing has had applied thereto a manufacturing effort, but difficulty is often encountered in determining where the narrow borderline rests between *a thing manufactured and the manufacture of a thing.*

\* \* \* \* \* \* \*

the courts have distinguished between a thing which has been manufactured only to a certain point and a thing which has been manufactured to the point where it has become the manufacture of a material, to wit, a wholly new article with a new name and use. Running through all the decisions is the general fundamental principle that before an article of imported merchandise may be regarded as the *manufacture of* a material, it must have been so far processed from its original condition as to have acquired new characteristics and thereby become a new article with a new name and new use.

In the *Roberts, Cushman & Co.* case, T. D. 13603, G. A. 1875, pieces of cork 6″ long, ¾″ wide, and ⅛″ thick, with a grooved surface on one side and with both ends finished in the form of a wedge, were classified as nonenumerated manufactured articles. The merchandise was claimed dutiable as manufactured corks. The court held that the articles were cork ventilators designed for use in men's hats and were manufactures of cork rather than manufactured corks.

In the *Unkart, Travis & Co.* case, T. D. 32527, G. A. 7366, certain rye straws cut into specified lengths, assessed as manufactures of straw, were claimed dutiable as nonenumerated manufactured articles. The court found that the straws were sun dried and bleached. The court stated:

It does not follow, however, that, simply because these straws are bleached, they are manufactures of straw. On the contrary, their very appearance is convincing that they are still straws. *To constitute manufactures of straw they would have to be made into articles, have a new name, and use. They are, however, straws manufactured, and as such, in the absence of specific provision therefor in the existing tariff, are subject to duty at the rate of 20 percent ad valorem under paragraph 480, and that claim in the protest is therefore sustained.* [Italics not quoted.]

The evidence before us in this case discloses that the product is manufactured. From all that appears the article imported as "blandola" is complete and ready for use and has reached the state of a commodity of commerce having a name and use wholly new and distinct from that of seaweeds. Would such a commodity be merely manufactured seaweeds, or would it assume the character of an article transformed from seaweeds by manufacturing processes into a new article? If the former, it is essential that it still be seaweeds. If the latter, the product has lost its identity as seaweeds and has assumed a new and different status, and thus would be excluded from the seaweeds classification. The collector in classifying the article as a nonenumerated manufacture necessarily reached the conclusion that the processing of seaweeds had progressed to such a stage that advancement had been made beyond the stage of manufactured seaweeds and that new characteristics had been assumed by the product which would exclude it from such classification. The evidence before us fails to meet the issue in such respect. There is nothing before us to show that the characteristics of the article have not been changed from that of seaweeds into a totally different product. From the chemist's reports the product is not seaweeds. Clearly the presumption of correctness of the collector's classification has not been overcome.

For the reasons stated, judgment will be entered in favor of the defendant.